## Western Tube Co. v. Joseph Polobinski.

1. FELLOW-SERVANTS.—*What is Essential to Constitute Servants of a Common Master Such.*—In order to constitute the servants of a common master fellow-servants within the meaning of the law, it is essential that they should be, at the time in question, actually co-operating with each other in the particular business in hand in the same line of employment, or that their duties should be such as to bring them into habitual association, so that they may exercise a mutual influence upon each other promotive of proper caution.

2. MASTER AND SERVANT—*Duty of the Master to Furnish a Safe Place for his Servant to Work.*—It is the duty of a master to use reasonable diligence in seeing that the place where the work of his servant is to be done, is safe for that purpose, and this duty extends not only to such risks as are known to him but to such as ought to be known by the exercise of due diligence.

3. SAME—*Where the Master is Chargeable with Notice of Dangers.*— Proof that hot cinders frequently explode when unloaded upon wet surfaces establishes the fact that such cinders are liable to explode when so unloaded, and tends to charge an employer of workmen with notice of such fact.

4. PRACTICE—*Harmless Error in Sustaining Objections to Evidence.* —Where the trial court erroneously sustained an objection to a question

of counsel, if the answer sought for is subsequently obtained and the erroneous ruling does not deprive the party of the benefit of the evidence, the error is harmless.

5. SAME—*Reading from Transcripts of Evidence on Former Trials.*—It is not proper for counsel. in argument, to read to the jury from the transcript of the testimony given on a former trial, but such counsel may be permitted to read a transcript of what witnesses at the trial testified was sworn to on a former trial.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Henry County; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed April 11, 1901.

CHAS. K. LADD and N. F. ANDERSON, attorneys for appellant.

JOHN V. STREED, WILSON & MOORE and SEWARD S. SHIRER, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On February 19, 1898, Joseph Polobinski was engaged in loading cold " cinder taps" into a box railroad car, which stood on a railroad track in the yards of the Western Tube Company, a manufacturing concern, having a rolling mill, furnaces, etc. Polobinski was in the employ of the tube company as a common laborer. A hot cinder was wheeled into the yard where the car was, and dumped upon wet ground, snow and water, near Polobinski and it soon thereafter exploded. Polobinski's clothing was set on fire. He was severely burned and otherwise injured, and lost the sight of both eyes. He brought this suit against the Western Tube Company to recover damages for his injuries, and filed a proper declaration, to which defendant pleaded not guilty. Two juries were unable to agree. Upon a trial by a third jury, the issues were found for plaintiff, and his damages assessed at five thousand dollars. Defendant moved for a new trial. This was denied, and judgment rendered on the verdict. Defendant appeals. It is not claimed the verdict is excessive, if plaintiff was entitled to recover. It is argued that the proof does not

warrant a verdict for plaintiff; that the court erred in rulings upon objections to testimony, in rulings upon instructions, and in refusing to permit defendant's counsel in his closing argument to read to the jury from a certain transcript.

Plaintiff was one of a gang of four men engaged in shoveling cold cinders into a box car in the yard called here the dumping ground. Two other men were assisting him in shoveling, and a fourth was inside the car, shoveling the cinders into the ends of the car. The cinders were formed by opening a hole in the back end of defendant's furnaces, in an entirely different part of its grounds, and drawing off molten slag into an iron box on wheels, called a buggy. When this buggy was filled, it was hauled a short distance, and the contents allowed to stand and cool some two or two and one-half hours, until the outside had become hard. The cinder thus formed was then dumped upon iron plates to cool further, and the buggy was returned for another load of molten slag. These iron plates were in a different yard from the dumping ground. When the cinder had become sufficiently cool upon the iron plates, another employe wheeled a barrow to the side of the cinder, tipped up the barrow, inserted an iron hook under the edge of the cinder, and drew the cinder over upon the barrow, and then wheeled the cinder into the yard where the railroad track was, called the dumping ground, and there dumped the cinder upon the ground. Many cinders were upon the iron plates at the same time, and a large number of cinders were usually in the dumping ground at the same time. Felix Demon was the man who, on the day in question, and for six months prior thereto, wheeled cinders from the iron plates to the dumping ground. It is evident from the proof that he often took cinders to the dumping ground before they were entirely cool, for the men who loaded cinders from this latter yard into the cars were ordered not to put into a car any cinders that were hot, as they would burn the car. On the day in question, it had been snowing and raining, and the snow had been melting, and the

ground was wet, and there were pools of water in depressions in the dumping ground. Demon wheeled a hot cinder into the yard, and dumped it upon the ground near where plaintiff was shoveling up cold cinders, and turned away. The contact of the bottom of the hot cinder with the wet underneath caused steam to be formed underneath the cinder, and it exploded, producing the injuries to plaintiff. The preponderance of the evidence is that hot cinders had frequently exploded when turned over upon the iron plates when they were wet. No explosion had previously occurred when cinders were dumped in the dumping ground. It is argued that previous explosions of cinders when placed on the iron plates did not tend to make a case against defendant, nor charge defendant with notice that such cinders would explode when deposited in the dumping ground. The proof that they had frequently exploded when unloaded on the iron plates when they were wet showed that such cinders were liable to explode when unloaded while hot on a wet surface, and tended to charge defendant with notice of that fact. The proof showed that several servants of defendant knew of frequent explosions of cinders deposited on the wet plates, and that a boss had warned a servant engaged in handling the buggy not to deposit hot cinders on wet plates, as it was dangerous to do so. It is obvious that Demon wheeled this particular cinder from the plates and dumped it on the ground near plaintiff at a time when the cinder was too hot to be safely so hauled and dumped when the ground was wet. There is an abundance of proof to show that defendant must have known that a hot cinder was liable to explode when deposited on a wet plate, and it can be no excuse to defendant that it had never before hauled out so hot a cinder when the ground was wet and dumped it on water and snow in the dumping ground. Demon was not a fellow-servant with plaintiff, but engaged in a wholly different line of work. They did not in any way co-operate with each other. Defendant, by its bosses, had warned other employes of the danger of its explosion if a hot cinder was dumped

upon a wet place. It had never warned plaintiff of that danger, and he did not know of it. Plaintiff could not talk English, worked only occasionally in this yard, was "hustling" at his work when the explosion occurred, and did not know and had no means of knowing that the cinder Demon had just deposited near him was so hot as to be liable to explode. The proof showed that a bar and shovel, apparently those with which plaintiff worked, were found near the cinder after the explosion. From that fact, and the further fact that Demon walked one hundred and fifty two feet from the cinder before the explosion, defendant argues that plaintiff took his bar and started to break the cinder, and thereby caused the explosion, and therefore the explosion was due to his negligence and he can not recover. No witness testified that plaintiff touched the cinder with his bar. Plaintiff and the two men who were on the ground with him testify that he did not. The conclusion of the jury, therefore, that plaintiff did not break open the cinder and cause the explosion, can not be disturbed under this evidence. But even if plaintiff had broken the cinder open with his bar and the explosion had resulted, it by no means follows that such fact would show plaintiff guilty of negligence. It was the duty of plaintiff and the other men on the ground with him to break up the cinders before they shoveled them into the car. They could not be shoveled until they had been broken into small pieces. Defendant had never before caused a cinder to be deposited in the dumping ground so hot that it was unsafe to break it. It does not appear that the plaintiff had any reason to suppose that it would be dangerous for him to break up a cinder deposited near the car for the very purpose of being broken and shoveled into the car. We conclude, therefore, the verdict is warranted by the evidence.

It is claimed the court erred in sustaining objections to many questions put by defendant, most of them on cross-examination of plaintiff's witnesses. It may be that the court should have permitted some of these questions to be answered. But in every such case, we find, upon further

Western Tube Co. v. Polobinski.

examination of the record, that the answer sought for was obtained in the end, and the matter put in evidence. For instance, plaintiff having called Dr. Charles W. Hall, the physician who attended him after his injuries, and examined him as to the injuries, defendant asked him, on cross-examination, whether, if plaintiff had been removed to a hospital, the sight of one eye might not have been saved. Plaintiff objected to the questions as not proper cross-examination, and the court sustained the objection. But before the witness left the stand, the doctor testified that if his directions had been followed, it was reasonably certain plaintiff would have had imperfect vision in the left eye. The abstract makes it appear that this was all drawn out on the re-direct examination, but the record shows that a part of it was upon re-cross-examination by defendant. But if this was not a sufficiently full answer to the interrogatories to which the court had sustained objections as not proper cross-examination, defendant afterward called Dr. Hall, and examined him at great length and without any obstruction, as to the failure of plaintiff to follow the treatment prescribed, and his refusal to go to a hospital, and to the fact that, in the opinion of the doctor, the sight of one eye could have been partially saved if he had obeyed directions and gone to a hospital. Therefore, and if the original ruling was incorrect, defendant had, to the fullest extent, the benefit of all that it sought to obtain. An examination of the record will show that the rulings complained of did not deprive the defendant of the benefit of evidence so sought by any questions which were proper. As to most of the objections, however, which were interposed to defendant's questions, we are of opinion the rulings of the court were correct. Space will not permit a discussion of each of these rulings, but a single instance will be given. Defendant sought to prove what instructions the boss in charge of the men loading cinders into the car gave to them, and the court sustained an objection to the question. It had already appeared that plaintiff was a Lithuanian, and spoke that language only, and could not understand any English what-

ever. The boss spoke the English language only, and gave his directions in English, and there was no offer to prove that these directions had been conveyed to plaintiff. Rowland was the only one of the four who could talk English. The proof was that the others obtained their information of what to do by watching Rowland. Whatever they saw Rowland do, that they did.

We do not deem it necessary to discuss all of the instructions in detail. The instructions given at the request of plaintiff seem to state the law correctly. The declaration charged that the defendant knew " or by the exercise of due care should have known of the danger of dumping hot cinders upon wet ground," and the evidence warranted instruction upon that subject. Defendant does not discuss to any extent the modifications of many of its instructions, but we have examined, and approve them. The jury was instructed at great length and very fully on behalf of the defendant. The refused instructions were, in the main, incorrect, and so far as they embodied a correct statement of the law, they were included in the instructions which were given for defendant. Complaint is specially made of the refusal of instruction number thirty-five. It is word for word exactly the same as instruction number six, given for the plaintiff, and the court properly refused to repeat the proposition. The thirty-second instruction, offered by defendant and refused, would have excluded from the consideration of the jury the conclusion the proof warranted them in reaching, that defendant had never before caused so hot a cinder to be taken from the plates to the dumping ground and there deposited when the ground was wet. The fact that theretofore the cinders when deposited in the dumping ground on wet days had been cool enough so they did not explode, did not exonerate defendant. The thirty-fourth instruction would have directed the jury to disregard all the evidence given by certain witnesses named, upon the question whether defendant knew or ought to have known that hot slag coming in contact with moisture was dangerous. The testimony of these witnesses was competent and

Western Tube Co. v. Polobinski.

material for plaintiff in the case, and we are unable to see why the court should have been asked to exclude it. That instruction was also erroneous in requiring notice of the danger of explosion of cinders from moisture to be brought home to the officers of the defendant or some particular person in charge of the cinders after they were brought out of the mill, when the proof showed it was well known throughout the mill, to bosses and others, that cinders deposited upon a wet place, when hot, were liable to explode.

During the argument by defendant's counsel, he started to read to the jury from a certain transcript, and objection was made, and the court refused to permit him to do so, and an exception was taken. As we understand the statement in the bill of exceptions, what counsel was then proposing to read was not the transcript of the testimony given at this trial, but a transcript of the testimony on a former trial of this cause. We are confirmed in this conclusion by what is said about it by counsel for appellant in their brief. If counsel had proposed to read from a transcript prepared by the official reporter, of the testimony given at this trial as to what was sworn to on the former trial, we see no reason why counsel should not have been allowed to read from such transcript. But to let counsel take the transcript of the former trial; and to attempt to pick out of that and read to the jury portions which he claimed witnesses on this trial had testified were sworn to on the former trial, was liable to lead either to disputes or to an abuse of the permission.

We find no reversible error in the record, and the judgment is therefore affirmed.